THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 21 C 5552 |
| v. | ) ) | Judge Virginia M. Kendall |
| AMERICAN FLANGE and GREIF, INC., | ) ) | |
| *Defendants*. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Equal Employment Opportunity Commission (EEOC), claims Defendants American Flange and Greif, Inc. violated the Americans with Disabilities Act (ADA) by refusing to reasonably accommodate former employee Marques Griffin's disability, and then firing him. (Dkt. 19). Greif's fourth affirmative defense asserts that the EEOC did not meet its pre-suit statutory obligation to attempt conciliation with Greif. (Dkt. 37 at 9). The EEOC moves for partial summary judgment on Greif's failure-to-conciliate defense. (Dkt. 64). Based on the same defense, Greif cross-moves for summary judgment on all claims against it. (Dkt. 74). For the following reasons, the EEOC's partial motion is granted in part as to Greif's fourth affirmative defense.[1] Greif's cross-motion is denied.

## BACKGROUND

On February 10, 2020, Marques Griffin filed a charge with the EEOC, alleging disability discrimination. (Dkt. 76 ¶ 1; Dkt. 65-1 at 4). Griffin named American Flange as his employer— not its parent company, Greif, Inc. (Dkt. 76 ¶ 1; Dkt. 65-1 at 4; Dkt. 91-1 at 3). "Greif is [also] a

---

[1] American Flange previously asserted failure to conciliate as its fourth affirmative defense, (Dkt. 22 at 11), which it has since withdrawn. (Dkt. 75 at 1 n.1). As to American Flange's now-withdrawn fourth affirmative defense—on which the EEOC also sought summary judgment (Dkt. 64)—the EEOC's motion is dismissed in part as moot.

brand," explains the affidavit of American Flange plant manager John Kiefer, and "American Flange, as a subsidiary of Greif, Inc., operates at times under the Greif brand." (Dkt. 91-1 ¶¶ 8–9).[2]

On February 13, 2020, the EEOC sent a notice of Griffin's charge to American Flange. (Dkt. 76 ¶¶ 1–2; Dkt. 65-1 at 4; Dkt. 88 at 7–8 ¶¶ 1–3; Dkt. 76-1 at 4–5). Five days later, American Flange logged into the EEOC charge portal and downloaded Griffin's charge. (Dkt. 89-18). And on February 28, 2020, American Flange added contact information for human resources manager Gina Johnson, including her email address at the domain, "Greif.com." (Dkt. 91 ¶ 1; Dkt. 89-18). According to the Kiefer's affidavit, Johnson worked for Greif Packaging, LLC, rather than Greif, Inc. (Dkt. 91-1 at 3). American Flange also added contact information for attorney Michael O'Brien, of the law firm currently representing both American Flange and Greif. (Dkt. 91 ¶ 1; Dkt. 89-18). The redacted charge detail inquiry, an internal record of the EEOC's steps taken toward resolving Griffin's charge, did not list Greif as a respondent. (Dkt. 89-1).

In a February 12, 2021 letter of determination, the EEOC named Greif as an additional respondent. (Dkt. 76 ¶ 3; Dkt. 65-1 at 6–7). The letter—which explained that it used the term "Respondent" to refer collectively to American Flange and Greif—stated that the EEOC had reasonable cause to believe that both employers had violated the ADA by "disciplining [Griffin], denying him a reasonable accommodation, and discharging him" based on his disability. (Dkt. 76 ¶ 3; Dkt. 65-1 at 6). In the letter of determination, the EEOC invited American Flange and Greif "to participate in conciliation efforts." (Dkt. 76 ¶ 4; Dkt. 65-1 at 6–7).

---

[2] Unless otherwise noted, this Opinion uses "Greif" to refer to Greif, Inc., the Defendant.

EEOC enforcement supervisor Ernestine Harris, who signed the letter of determination, attested by affidavit that the EEOC issued the letter to Greif. (Dkt. 65-1 at 1–2, 6–7).[3] Indeed, the EEOC emailed the letter of determination to O'Brien, who confirmed receipt the next day. (Dkt. 91 ¶ 3; Dkt. 89-3 at 2–3). Harris also stated that the EEOC communicated with American Flange and Greif, giving them the chance to remedy their alleged discriminatory conduct. (Dkt. 76 ¶ 5; Dkt. 65-1 at 2). On February 25, 2021, O'Brien emailed EEOC investigator Eva Baran: "American Flange has asked me to contact you to indicate that they are willing to engage in the conciliation process . . . ." (Dkt. 76-1 at 7).

Then, in June 2021, O'Brien discussed conciliation with the EEOC on Greif's behalf, in an email thread with the subject line "RE: Marques Griffin v. American Flange/Grief, Inc [sic]." (Dkt. 91 ¶ 2; Dkt. 89-2). Specifically, O'Brien's redacted emails to the EEOC stated: "Greif is willing . . ."; "Greif's counter offer . . ."; "Greif would also be willing . . ."; "Greif's initial offer: . . ."; "In order to continue negotiations, Greif . . ."; and "Greif is willing to continue to engage in good faith negotiations . . . ." (Dkt. 91 ¶ 2; Dkt. 89-2). After the EEOC decided that conciliation efforts had failed, on August 4, 2021, Harris sent O'Brien a letter noticing the failure, listing only American Flange as the respondent. (Dkt. 76 ¶¶ 6–7; Dkt. 65-1 at 9).

The EEOC sued American Flange and Greif on October 19, 2021 (Dkt. 1) and amended its complaint on January 7, 2022 (Dkt. 19). Greif moved to dismiss, arguing that the EEOC failed to conciliate. (Dkt. 23). The Court denied the motion. (Dkt. 34); *EEOC v. Am. Flange*, 2022 WL 1693487 (N.D. Ill. May 26, 2022). The EEOC's First Amended Complaint, the Court explained,

---

[3] As to her personal knowledge of the facts to which she testified, Harris stated that she reviewed the investigative file for Griffin's charge. (Dkt. 65-1 at 1). Harris further "participate[s] in determinations finding reasonable cause and in issuing cause letters of determination, . . . participate[s], at the supervisory level, in informal conciliation efforts," is "involved in the determination that further efforts to conciliation would be futile or nonproductive, . . . and direct[s] the notification of the respondent in writing." (*Id.*)

adequately alleged that Greif had notice of Griffin's EEOC charge and the opportunity to participate in conciliation efforts. *Am. Flange*, 2022 WL 1693487, at *3–5. Answering the EEOC's First Amended Complaint, American Flange and Greif both raised the EEOC's failure to attempt conciliation as an affirmative defense. (Dkt. 22 at 11; Dkt. 37 at 9). The EEOC moved for partial summary judgment on the failure-to-conciliate defense. (Dkt. 64). While American Flange withdrew its failure-to-conciliate defense, (Dkt. 75 at 1 n.1), Greif cross-moved for summary judgment on the EEOC's claims. (Dkts. 74, 75).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the Court "construe[s] all facts and inferences in favor of the party against whom the motion under consideration is made." *Markel Ins. Co. v. Rau*, 943 F.3d 1012, 1016 (7th Cir. 2020). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). A genuine issue of material fact exists when there is "sufficient evidence" for a jury to return a verdict in favor of the party opposing summary judgment. *Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## DISCUSSION

In enforcing the ADA's prohibition on disability-based employment discrimination, the EEOC must navigate a multi-step process before filing a federal lawsuit. *See Mach Mining, LLC v. EEOC*, 575 U.S. 480, 483 (2015); 42 U.S.C. §§ 2000e-5(b), (f)(1) (providing pre-suit requirements); 42 U.S.C. § 12117(a) (adopting Title VII enforcement procedures for ADA

claims). The process ensures the employer receives notice of its employee's grievance, and it provides an opportunity for the EEOC and the employer to conciliate the matter short of litigation. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

To start, an aggrieved employee must file a charge with the EEOC, complaining of the employer's unlawful conduct. 42 U.S.C. § 2000e-5(b); *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018); *Mach Mining*, 575 U.S. at 483. Then, the EEOC must give the employer notice of the charge and investigate. § 2000e-5(b); *Mach Mining*, 575 U.S. at 483. If the EEOC finds "reasonable cause to believe that the charge is true," its next required step is to "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." § 2000e-5(b); *Mach Mining*, 575 U.S. at 483. Encouraging candid discussions toward conciliation, "'[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned'—both the employer and the complainant." *Mach Mining*, 575 U.S. at 492 (quoting § 2000e-5(b)); *see also Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 n.6 (5th Cir. 1981) ("The purpose of the statute is similar to that embodied in the traditional evidentiary rule making offers of compromise and settlement inadmissible." (citing Fed. R. Evid. 408)). If the EEOC cannot obtain a conciliation agreement it deems acceptable, it may sue the employer. § 2000e-5(f)(1); *Mach Mining*, 575 U.S. at 483–84.

The employee's charge sparks the investigation, and the EEOC has considerable flexibility in the steps that follow. *EEOC v. Caterpillar*, 409 F.3d 831, 833 (7th Cir. 2005); *accord Mach Mining*, 575 U.S. at 492. When the EEOC files suit, it "acts both for the benefit of specific individuals and 'to vindicate the public interest in preventing employment discrimination.'" *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996) (quoting *Gen. Tel. Co. of the*

*Nw., Inc. v. EEOC*, 446 U.S. 318, 326 (1980)); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 278, 291 (2002) ("The statute clearly makes the EEOC the master of its own case . . . ."). Thus, the EEOC is not limited "to claims typified by those of the charging party." *Caterpillar*, 409 F.3d at 833 ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." (quoting *Gen. Tel. Co.*, 446 U.S. at 331)); *see also EEOC v. United Parcel Serv.*, 94 F.3d 314, 318 (7th Cir. 1996) (explaining that the EEOC can pursue claims "on behalf of individuals beyond the charging parties").

In an action stemming from an employee's charge,[4] the EEOC generally cannot sue a defendant which the underlying charge did not name as a respondent. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013); 42 U.S.C. § 2000e-5(f)(1) ("[T]he Commission may bring a civil action against any respondent . . . named in the charge.").[5] Yet, an action may proceed where "an unnamed party [1] has been provided with adequate notice of the charge, [2] under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance" (the "*Eggleston* exception"). *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981). The exception "prevent[s] frustration" of the statute's goals "by not requiring procedural exactness in stating the charges." *Id.* Although the *Eggleston* exception is narrow—at least in the private-action context, *see Alam*, 709 F.3d at 667—so is the scope of judicial review as to the EEOC's statutory pre-suit obligations. *See Mach Mining*, 575 U.S. at 494.

In *Mach Mining, LLC v. EEOC*, the Supreme Court emphasized that judicial review of the EEOC's compliance with pre-suit requirements must be narrow, adhering to the terms of the

---

[4] The EEOC may bring a pattern-or-practice lawsuit without an underlying charge. *See Harvey L. Walner*, 91 F.3d at 968; *Gen. Tel. Co.*, 446 U.S. at 328.

[5] Section 2000e-5(f)(1) limits private actions with similar language. *See* 42 U.S.C. § 2000e-5(f)(1) ("[A] civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.").

statute. 575 U.S. at 494–95. To provide adequate notice, "the EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of 'reasonable cause.'" *Id.* at 494. The "notice properly describes both what the employer has done and which employees . . . have suffered as a result." *Id.* As to conciliation, "the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice." *Id.* "Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute." *Id.*; *see also Caterpillar*, 409 F.3d at 833 (holding the that the EEOC's finding of reasonable cause is generally unreviewable).

The statute gives the EEOC "wide latitude . . . to pursue voluntary compliance with the law's commands." *Mach Mining*, 575 U.S. at 492. Indeed, the "conciliation provision smacks of flexibility." *Mach Mining*, 575 U.S. at 492.

> Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief.

*Id.* Courts would undermine that flexibility by taking "a deep dive into the conciliation process." *Id.* at 490, 492. Neither does judicial review entail "accept[ing] the EEOC's say-so that it complied with the law." *Id.* at 490. Instead, the point is to "*verify* the EEOC's say-so—that is, to determine that the EEOC actually, and not just purportedly, tried to conciliate a discrimination charge." *Id.* Mindful of the statutory nondisclosure provision, the Court's "barebones review" must "look[] only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.*, statements made or positions taken) during those discussions." *Id.* at 494.

In suits by the EEOC, *Mach Mining* suggests the *Eggleston* exception should apply with due regard for the "expansive discretion" Congress has given the EEOC to navigate the pre-suit process. *See Mach Mining*, 575 U.S. at 494; *EEOC v. Sol Mex. Grill, LLC*, 415 F. Supp. 3d 5, 15 (D.D.C. 2019) ("The EEOC's flexibility in investigating charges extends to the naming of the employer."); *cf. EEOC v. McLean Trucking Co.*, 525 F.2d 1007, 1012 (6th Cir. 1975) (explaining that the EEOC may expand its suit to join a union not named in the underlying charge, at least where the case requires interpreting a collective bargaining agreement); *see also EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 101 (2d Cir. 2015) (holding that *Mach Mining* urges narrow review of an EEOC investigation).[6]

Usually, the EEOC can show that it has met the statutory requirements with a sworn affidavit of the agency representative involved. *Mach Mining*, 575 U.S. at 494–95 (citing *United States v. Clarke*, 573 U.S. 248, 254 (2014)). But if "the employer provides credible evidence of its own . . . indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute." *Id.* at 495 (citing *Clarke*, 573 U.S. at 254–55).

---

[6] The Seventh Circuit has not discussed how *Eggleston* applies to suits by the EEOC. *See EEOC v. Vucitech*, 842 F.2d 936, 944 (7th Cir. 1988) (observing that "persons not named in EEOC charges can sometimes be sued in private actions, so perhaps the [defendants] should have known at the time that [they were] negotiating with the EEOC over [their company's] liability that they might be sued, either by the employees they had discriminated against or by the EEOC on behalf of those employees." (citing *Eggleston*, 657 F.2d at 905–06)). The parties and this Court, like numerous other district courts, have assumed *Eggleston* applies to actions by the EEOC. *See Am. Flange*, 2022 WL 1693487, at *3; *EEOC v. Custom Cos., Inc.*, 2007 WL 734395, at *1 (N.D. Ill. Mar. 8, 2007); *EEOC v. U-Haul Int'l, Inc.*, 2005 WL 8178948, at *1 (N.D. Ill. Aug. 10, 2005); *EEOC v. Walsh Constr. Co.*, 2004 WL 1576698, at *1 (N.D. Ill. July 13, 2004); *EEOC v. Christie Lodge Assocs., Ltd.*, 1990 WL 70392, at *2–3 (N.D. Ill. May 11, 1990); *EEOC v. Tesko Welding & Mfg. Co.*, 1988 WL 64576, at *1 (N.D. Ill. June 14, 1988); *see also EEOC v. 1618 Concepts, Inc.*, 432 F. Supp. 595, 603–04 (M.D.N.C. 2020); *Sol Mex. Grill, LLC*, 415 F. Supp. 3d at 15; *EEOC v. GSNSC Admin. Servs. LLC*, 2017 WL 1152190, at *4 (E.D. Wis. Mar. 28, 2017); *EEOC v. Care Ctrs. Mgmt. Consulting, Inc.*, 942 F. Supp. 2d 771, 775 (E.D. Tenn. 2013); *EEOC v. Ganley Mgmt. Co.*, 2010 WL 11565385, at *6 (N.D. Ohio Mar. 25, 2010); *EEOC v. Jeff Wyler Eastgate, Inc.*, 2006 WL 2785774, at *4 (S.D. Ohio Jan. 9, 2006); *EEOC v. Earl Scheib of Kan., Inc.*, 2000 WL 382008, at *3 (D. Kan. Mar. 15, 2000); *EEOC v. Newtown Inn Assocs.*, 647 F. Supp. 957, 960 (E.D. Va. 1986); *EEOC v. Charleston Elec. Joint Apprenticeship Training Comm.*, 587 F. Supp. 528, 530 (S.D. W. Va. 1984). The assumption finds support in § 2000e-5(f)(1), which uses similar language to limit suits by employees and the EEOC to respondents "named in the charge." *See* 42 U.S.C. § 2000e-5(f)(1).

Against that backdrop, the Court will consider whether the EEOC gave Greif adequate notice and the opportunity to conciliate—the focus of the present cross-motions. But first, the Court resolves two evidentiary disputes.

## A. Admissibility of Evidence of Notice and Conciliation

Opposing Greif's arguments that it lacked notice and a chance to conciliate, the EEOC relies on (1) redacted emails from conciliation discussions; and (2) affidavits of EEOC employees Harris and Baran, who were not among the witnesses in the EEOC's initial disclosures. Despite Greif's objections, both the emails and affidavits are admissible.

### 1. Redacted Emails

The EEOC points to redacted emails during conciliation discussions to show that O'Brien, on behalf of Greif, confirmed receipt of the EEOC's letter of determination and engaged in conciliation discussions. (Dkt. 89-2).[7] Greif argues O'Brien's redacted emails are inadmissible under § 2000e-5(b) and Federal Rule of Evidence 408. (Dkt. 90 at 4; Dkt. 91 ¶ 2). The Court disagrees.

Section 2000e-5(b), encouraging open and honest conciliation discussions, provides: "Nothing said or done during and as part of such informal endeavors may be made public by the Commission, its officer or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned." 42 U.S.C. § 2000e-5(b). Where an employer challenges the EEOC's indirect evidence that notice and conciliation efforts occurred, *Mach Mining* makes clear that courts must look beyond the EEOC's "bookend" letters—the letter of determination and the letter of conciliation failure—to "*verify* the EEOC's say-so." *See Mach Mining*, 575 U.S. at

---

[7] The emails are redacted to maintain the confidentiality of conciliation discussions. In the unredacted portions of O'Brien's emails, he stated: "Greif is willing . . ."; "Greif's counter offer . . ."; "Greif would also be willing . . ."; "Greif's initial offer: . . ."; "In order to continue negotiations, Greif . . ."; and "Greif is willing to continue to engage in good faith negotiations . . . ." (*Id.*)

490; *see also, e.g.*, *EEOC v. Rockwell Int'l Corp.*, 922 F. Supp. 118, 120 (N.D. Ill. 1996) (finding employer's arguments on the scope of conciliation efforts required consideration of written conciliation discussions to decide whether the EEOC had satisfied its pre-suit obligations).

Greif, by contesting its notice of the charge and participation in conciliation discussions, has necessitated factfinding on those issues. The emails here suggest that the EEOC gave Greif notice and "attempted to confer about [Griffin's] charge." *Id.* at 494. As redacted, the emails do not reveal "statements made or positions taken" during conciliation discussions. *See id.* at 494; *see also, e.g.*, *EEOC v. Phase 2 Invs. Inc.*, 2018 WL 826526, at *7 n.4 (D. Md. Feb. 12, 2018) ("The Court can look beyond the letter of determination as to whether the conciliation efforts were actually made but still refrain from engaging with the substance of the particular communications." (citing *Mach Mining*, 575 U.S. at 494)); *EEOC v. CRST Int'l, Inc.*, 351 F. Supp. 3d 1163, 1178–79 (N.D. Iowa 2018) (considering "non-specific" evidence providing only the information necessary to determine whether the EEOC tried to conciliate); *cf. EEOC v. Mach Mining, LLC*, 161 F. Supp. 3d 632, 635–36 (S.D. Ill. Jan. 19, 2016) (on remand, striking the portions of briefs indicating the parties' positions and specific actions during conciliation). Rather, O'Brien's redacted emails reflect the mere fact of Greif's participation in conciliation efforts—revealing little more than Harris's affidavit testimony that the EEOC communicated with American Flange and Greif. (*Compare* Dkt. 89-2, *with* Dkt. 65-1 at 2). Although the unredacted portions of the emails show that Greif made statements and took positions during conciliation, the specifics remain confidential.

Of course, the EEOC need only show that it *tried* "to engage the employer in some form of discussion." *Mach Mining*, 575 U.S. at 494. The redacted emails go a step further by showing that Greif accepted the invitation. But since § 2000e-5(b) permits review of evidence

demonstrating the EEOC's conciliation efforts, reviewing evidence that conciliation discussions occurred—necessarily showing that the EEOC attempted conciliation—appears unproblematic. *See id.*[8] Notably, this very tension between judicial review of the EEOC's pre-suit obligations and the confidentiality provision—whose plain text is arguably broad enough to bar evidence that the EEOC even attempted to conciliate—led the Seventh Circuit to conclude that the EEOC's conciliation efforts are altogether unreviewable. *See EEOC v. Mach Mining, LLC*, 738 F.3d 171, 174–75 (7th Cir. 2013), *vacated*, 575 U.S. 480. And the Supreme Court squarely rejected that conclusion. *Mach Mining*, 575 U.S. at 488–89.

Under these circumstances, admitting evidence that Greif discussed conciliation does not undermine the evidentiary bar's purpose. *See id.* at 483, 493. What matters is that parties attempting conciliation "know that statements they make cannot come back to haunt them in litigation." *Id.* at 493 (citing *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 599 n.16 (1981)). Although the prospect of proceeding to the merits may haunt Greif, that outcome would have likely become more certain had Greif decided against engaging in conciliation discussions. So the disclosure of evidence that discussions occurred is no threat to the statute's goal of promoting informal resolution of charges.

Nor should § 2000e-5(b) permit a party to keep the fact of its participation in conciliation discussions secret to "derail or delay a meritorious claim." *See id.* at 494. Along these lines, Greif

---

[8] Since *Mach Mining*, several courts have reviewed evidence that conciliation discussions occurred to reject failure-to-conciliate defenses. *See, e.g.*, *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1196 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 623 (2017) (considering evidence that the EEOC, a state civil rights division, and the employer "attended a joint conciliation session," during which the employer "made a counteroffer as to [one employee] but did not make a counteroffer to the class demand"); *EEOC v. MJC, Inc.*, 306 F. Supp. 3d 1204, 1217, 1219 (D. Haw. 2018) (considering evidence "that 'some form of discussion' took place between the EEOC and Defendants," but refusing to consider the defendants' argument, based on evidence of the substance of conciliation discussions, that the EEOC's conciliation efforts were deficient); *EEOC v. United Parcel Serv., Inc.*, 2017 WL 9482105, at *10 (E.D.N.Y. Mar. 9, 2017) ("[T]he EEOC engaged UPS in the process of conciliation and . . . the EEOC exchanged multiple communications with UPS and met with UPS to discuss a potential resolution . . . ."), *report and recommendation adopted in part*, No. 15-CV-4141 (E.D.N.Y. June 29, 2017), ECF no. 70.

cannot use the confidentiality of conciliation discussions as both its sword and shield. *See, e.g.*, *Phase 2 Invs.*, 2018 WL 826526, at *7 ("[Section 2000e-5(b)] is a shield and not a sword."); *EEOC v. Am. Tool & Mold, Inc.*, 2013 WL 12155446, at *3 (M.D. Fla. Nov. 26, 2013) ("The EEOC would be unfairly prejudiced if it were prevented from contesting [the employer's] version of the facts, while [the employer] remained free to use § 2000e-5(b)'s evidentiary bar as both a sword and a shield.").

Greif suggests that it did not receive notice or have the chance to attempt conciliation, while urging that evidence to the contrary is off limits. For example, Greif has offered another of O'Brien's emails to the EEOC, which stated that American Flange was willing to attempt conciliation. (Dkt. 76-1 at 7). Greif would use O'Brien's email to prove that he represented American Flange during conciliation efforts, while invoking § 2000e-5(b) to exclude O'Brien's other redacted emails, which show that he also represented Greif. Allowing this sort of gamesmanship would do little to foster open and honest conciliation discussions. Instead, it would needlessly tie the EEOC's hands and encourage employers to delay litigation by disputing the EEOC's compliance with § 2000e-5(b) with thin affirmative evidence. Accordingly, § 2000e-5(b) does not bar admission of the redacted emails for the limited purpose of showing that O'Brien, representing Greif, confirmed receipt of a notice from the EEOC and engaged in conciliation discussions.[9]

Similarly unconvincing is Greif's objection to the admissibility of the redacted emails under Federal Rule of Evidence 408. (Dkt. 91 ¶ 2). The Rule precludes the admission of evidence of "conduct or statements made in compromise negotiations about the claim"—"either to prove or

---

[9] Greif relies on *EEOC v. LifeCare Mgmt. Servs., LLC*, which is distinguishable. *See* 2009 WL 772834, at *4 (W.D. Pa. Mar. 17, 2009) (finding § 2000e-5(b) barred consideration of a proposed conciliation agreement and conciliation discussions, including the substance of the EEOC's settlement demand and the employer's counteroffer).

12

disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a)(2). Like § 2000e-5(b), Rule 408 aims to encourage candid discussions toward settlement. *Branch*, 638 F.2d at 881 n.6; *see also EEOC v. Scrub, Inc.*, 2010 WL 2136807, at *6 (N.D. Ill. May 25, 2010). Carved out from Rule 408's prohibition, however, is any evidence offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b); *Bankcard Am., Inc. v. Universal Bancard Sys, Inc.*, 203 F.3d 477, 483–84 (7th Cir. 2000) ("The rule permits evidence that is otherwise discoverable or that is offered for a purpose other than establishing liability.").

The redacted emails do not fall within Rule 408's prohibition because the EEOC has not offered the emails to establish liability or for impeachment. *See* Fed. R. Evid. 408(a)(2); *cf. United States v. OCCI Co.*, 758 F.2d 1160, 1165 n.6 (7th Cir. 1985) (noting that facts which "directly concern the validity of [a government agency's] claim . . . may be inadmissible" (citing Fed. R. Evid. 408)). Instead, the emails serve "another purpose"—showing Greif's notice of Griffin's charge and participation in conciliation discussions. *See* Fed. R. Evid. 408(b). Again, since the redacted emails do not reveal Greif's statements or positions, there is no danger of hampering honest conciliation discussions. Nor will the Court's consideration of these emails for the narrow purpose of resolving Greif's failure-to-conciliate defense result in prejudice toward either party. *Cf. EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1545–46 (10th Cir. 1991) (explaining that settlement evidence can prejudice a jury); *see also EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 790–92 (8th Cir. 2009) (assuming Rule 408 applied to an unredacted note relating to the conciliation process, but holding the note's admission was harmless despite a slight risk of

prejudicing the jury). Thus, the redacted emails are admissible to show that the EEOC complied with the requisite pre-suit procedures.

### 2. Harris's and Baran's Affidavits

As further evidence of Greif's notice and participation in conciliation efforts, the EEOC points to the affidavits of Harris and Baran. (Dkt. 65-1 at 1–2; Dkt. 89-18). Greif asks the Court to disregard both affidavits because the EEOC did not timely disclose either witness. (Dkt. 90 at 3– 4; Dkt. 76 at 3, 5, 7). Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). After making a required initial disclosure under Rule 26(a), the party "must supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e)(1). If a party fails to disclose a witness, Rule 37(c)(1) precludes it from relying on that "witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Birch|Rea Partners*, 27 F.4th at 1253. Courts apply the disclosure requirements "with common sense," to direct attention to necessary discovery "and facilitate preparation for trial or settlement"—not to encourage parties to "indulge in gamesmanship." *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 F. App'x 873, 877 (7th Cir. 2011) (quoting Fed. R. Civ. P. 26(a)(1) advisory committee's note to 1993 amendment).

The EEOC did not specifically identify Harris or Baran as witnesses in its initial or first amended disclosures. (Dkt. 91-1 at 11–19). Responding to Greif's affirmative failure-to-conciliate defense, the EEOC now offers Harris's and Baran's affidavits for the narrow purpose of demonstrating its compliance with statutory pre-suit procedures. Although the text of Rule

26(a)(1)(A)(i) requires disclosure of witnesses a "party may use to support *its* claims or defenses," the Court assumes the Rule extends to witnesses called to rebut an opponent's affirmative defense. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added); Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 386 (2000) ("The disclosure obligation . . . requires a party to disclose information that it may use to support its denial or rebuttal of the allegations, claim, or defense of another party."). Even supposing the EEOC's failure to disclose Harris and Baran as witnesses ran afoul of Rule 26(a) however, that failure was harmless.

The admission of Harris's and Baran's affidavits on the issues of notice and conciliation will not prejudice Greif. Presumably, Greif knows as well as the EEOC whether it received notice of the charge against it or participated in conciliation discussions. Nothing suggests the EEOC has attempted to sandbag Greif with the affidavits by omitting Harris and Baran from its initial disclosures. *See, e.g.*, *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342742, at *5 (S.D.N.Y. Dec. 11, 2020) ("The purpose of [Rule 26(a)] is to prevent the practice of 'sandbagging' an opposing party with new evidence." (citations omitted)). Neither is there any indication that the EEOC's omission has stunted Greif's ability to gather evidence supporting its failure-to-conciliate defense—let alone prepare for settlement or trial. *See Robinson*, 412 F. App'x at 877.[10]

Moreover, the affidavits do not bear on any substantive issues. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise,

---

[10] In this vein, the Court notes that Magistrate Judge Sheila M. Finnegan found that a deposition of Harris was unnecessary, rejecting Greif's arguments against the EEOC's motion for a protective order. (Dkts. 72, 92). Magistrate Judge Finnegan correctly observed that Greif's failure-to-conciliate defense calls for limited factfinding. (Dkt. 92 at 9–12); *see Mach Mining, LLC v. EEOC*, 575 U.S. 480, 494 (2015). Greif has not asked the Court to reconsider the necessity of deposing Harris. Nor has Greif sought to depose Baran.

and not by ambush."); *cf. Smith v. AS Am., Inc.*, 829 F.3d 616, 625 (8th Cir. 2016) (holding Rules 26(a) and 37(c) did not require exclusion of evidence of attorneys' fees because the evidence had "nothing to do with the merits."). Common sense therefore dictates against the exclusion of Harris's or Baran's affidavits. The Court next considers notice and the opportunity to conciliate.

## B.    Notice

Greif received adequate notice of the charge against it. True, Griffin's charge and the EEOC's February 13, 2020 notice named only American Flange. (Dkt. 76 ¶¶ 1–2; Dkt. 65-1 at 4; Dkt. 88 at 7–8 ¶¶ 1–3; Dkt. 76-1 at 4–5).[11] But the EEOC named Greif as an additional respondent in its February 12, 2021 letter of determination. (Dkt. 76 ¶ 3; Dkt. 65-1 at 6–7). In the letter, the EEOC explained that it had reasonable cause to think that both American Flange and Greif had violated the ADA by "disciplining [Griffin], denying him a reasonable accommodation, and discharging him" based on his disability. (Dkt. 65-1 at 6). The letter of determination adequately described what Greif had done and that Griffin had "suffered as a result." *See Mach Mining*, 575 U.S. at 494; *see also, e.g.*, *EEOC v. Dolgencorp, LLC*, 249 F. Supp. 3d 890, 894–95 (N.D. Ill. 2017) (finding a similar letter of determination sufficient to provide notice).[12]

According to the affidavit of Harris, who signed the letter of determination, the EEOC issued the letter of determination to Greif. (Dkt. 65-1 at 1–2, 6–7).[13] On February 12, 2021, the

---

[11] On February 18, 2020, American Flange logged into the EEOC charge portal and downloaded Griffin's charge. (Dkt. 89-18). Ten days later, American Flange added contact information for O'Brien—from the law firm currently representing both American Flange and Greif—and for human resources manager Gina Johnson, including her email address at the domain, "Greif.com." (*Id.*; Dkt. 91 ¶ 1). Greif has submitted affidavit testimony that Johnson worked for Greif Packaging, LLC—not Greif, Inc. (Dkt. 91-1 at 3). Greif's evidence on this point creates a dispute of fact as to its notice of the charge in February 2020.

[12] Greif argues the letter of determination did not provide notice of the charge *against it* because it refers to one "Respondent." (Dkt. 75 at 7). But this argument ignores the letter's introductory statement defining "Respondent" to refer collectively to both respondents—American Flange and Greif. (*See* Dkt. 65-1 at 6).

[13] Greif objects that Harris lacks the personal knowledge to testify that the EEOC sent the letter to Greif. (Dkt. 75 at 6 n.3); *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."). Beyond having signed the letter of determination, Harris has testified that she reviewed the investigative file for Griffin's charge, and she "participate[s] in determinations finding reasonable cause and in

EEOC emailed the letter to O'Brien, who confirmed receipt the next day. (Dkt. 91 ¶ 3; Dkt. 89-3). In a June 2021 email thread with the subject line "RE: Marques Griffin v. American Flange/Grief, Inc [sic]," O'Brien discussed conciliation with the EEOC on Greif's behalf, suggesting Greif had received notice of Griffin's charge against it. (Dkt. 91 ¶ 2; Dkt. 89-2). In his redacted emails to the EEOC, O'Brien discussed Greif's conciliation positions. (Dkt. 91 ¶ 2; Dkt. 89-2). These emails provide strong evidence that Greif had notice of the charge against it.

Greif's evidence offered to contest the fact of its notice is unavailing. Greif first argues the EEOC's evidence fails to show that O'Brien represented Greif. (Dkt. 90 at 6). If American Flange was O'Brien's sole client in this matter, presumably, Greif—which is now sharing counsel with American Flange—could offer affirmative evidence on the scope of O'Brien's representation. At least, Greif could muster affidavit testimony that O'Brien did not represent Greif. Instead, Greif points to evidence that O'Brien represented American Flange. (Dkt. 76-1 at 1–2, 7). This does not suggest he represented *only* American Flange, especially considered next to the EEOC's evidence that O'Brien made statements about Greif's positions during conciliation discussions.

Then, Greif points to Kiefer's affidavit stating that "Greif is a brand," and "American Flange, as a subsidiary of Greif, Inc., operates at times under the Greif brand." (Dkt. 91-1 ¶¶ 8–9). Because American Flange "is sometimes colloquially referred to as 'Greif,'" Greif contends, O'Brien's references to "Greif" in his redacted emails might have described American Flange rather than Greif, Inc. (Dkt. 90 at 8). This is a stretch. In an email before the EEOC sent the letter of determination naming Greif as an additional respondent, O'Brien called American Flange by its own name. (Dkt. 76-1 at 7 ("American Flange has asked me to contact you to indicate that they

---

issuing cause letters of determinations." (Dkt. 65-1 at 1). Even if this evidence were insufficient to support a finding that Harris has the requisite personal knowledge, the EEOC has also shown through documentary evidence that Greif received notice of Griffin's charge. (*See* Dkt. 89-2).

are willing to engage in the conciliation process . . . ."). Evidence that American Flange "operates *at times* under the Greif brand" (Dkt. 91-1 ¶ 8 (emphasis added)), cannot support a reasonable finding that an attorney representing American Flange—after receiving a letter of determination naming American Flange and Greif as distinct respondents, in an email thread with both entities' names in the subject line—would refer to American Flange as "Greif." Thus, Greif has not demonstrated a genuine dispute of fact on the issue of notice.

## C.     Conciliation

The EEOC also gave Greif an opportunity to attempt conciliation. The letter of determination, which the EEOC emailed to O'Brien, invited both American Flange and Greif "to participate in conciliation efforts." (Dkt. 76 ¶ 4; Dkt. 65-1 at 6–7). Harris's affidavit attests that the EEOC communicated with American Flange and Greif, giving them the chance to remedy the alleged discriminatory conduct. (Dkt. 76 ¶ 5; Dkt. 65-1 at 2). O'Brien's June 2021 emails confirm that Greif joined in conciliation discussions. (Dkt. 91 ¶ 2; Dkt. 89-2). After the EEOC determined that conciliation efforts had failed, on August 4, 2021, Harris sent O'Brien a letter declaring the failure of conciliation efforts. (Dkt. 76 ¶¶ 6–7; Dkt. 65-1 at 9). O'Brien's emails show that he represented Greif, (Dkt. 89-2), which permits the inference that Greif also received notice that conciliation efforts had failed.

Greif's evidence does not raise a genuine dispute as to its opportunity to attempt conciliation. Greif leans on the EEOC's letter of conciliation failure and the charge detail inquiry— neither of which named Greif as a respondent. (Dkt. 65-1 at 9; Dkt. 89-1). According to Greif, these omissions show that it did not have the opportunity to attempt conciliation. (Dkt. 75 at 9; Dkt. 90 at 8–9). But the EEOC's failure to list Greif on the letter and its internal charge inquiry detail cannot support a reasonable conclusion that Greif had no chance to attempt conciliation—

especially considering O'Brien's emails showing that Greif, in fact, attempted to conciliate. This brings the Court's "barebones" review to an end.[14] The EEOC is entitled to judgment as a matter of law on Greif's failure-to-conciliate defense.

In closing, the Court notes that, even if Greif had prevailed in showing that the EEOC failed to meet its pre-suit obligations, Greif's requested remedy—dismissal of the EEOC's claims against it—would be improper. (*See* Dkt. 75 at 10). Instead, the appropriate remedy when an employer succeeds on its failure-to-conciliate defense is to stay the case and order the EEOC to seek the employer's voluntary compliance. *Mach Mining*, 575 U.S. at 495; 42 U.S.C. § 2000e-5(f)(1); *accord EEOC v. CVS Pharmacy, Inc.*, 907 F.3d 968, 976 (7th Cir. 2018).

## CONCLUSION

For the reasons above, the EEOC's Partial Motion for Summary Judgment [64] is granted in part as to Greif's fourth affirmative defense. As to American Flange's fourth affirmative defense, the EEOC's motion [64] is dismissed in part as moot. Greif's cross-motion for summary judgment [74] is denied.

Virginia M. Kendall
United States District Judge

Date: July 27, 2023

---

[14] The Court need not reach the EEOC's alternative argument that American Flange and Greif operate as a single employer, making American Flange's notice and opportunity to conciliate effective as to Greif. (Dkt. 87 at 6–10).